# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| SEAN WATTSON; KATELYN LAWRENCE; CEDRIC KILLINGS; and TIFFANY BURKS, on behalf of themselves And the Class defined below, ) ) ) ) ) ) | |
| Plaintiffs, ) | |
| v. ) | CIVIL ACTION NO.: |
| TOWN OF BROOKSIDE, ALABAMA, ) ) ) | 2:21-CV-00649-AMM |
| Defendant. ) | |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Sean Wattson; Katelyn Lawrence; Cedric Killings; and Tiffany Burks state the following as their First Amended Complaint against the Town of Brookside, Alabama ("Brookside").

## I. PARTIES

1. Sean Wattson is over the age of nineteen (19), and is a resident of Jefferson County, Alabama.

2. Katelyn Lawrence is over the age of nineteen (19), and is a resident of Jefferson County, Alabama.

1

3. Cedric Killings is over the age of nineteen (19), and a resident of Jefferson County, Alabama.

4. Tiffany Burks is over the age of nineteen (19), and a resident of Jefferson County, Alabama.

5. The Town of Brookside, Alabama, is a municipal corporation organized under the laws of the State of Alabama ("the State"), and subject to suit.

## II. JURISDICTION AND VENUE

6. This Court has jurisdiction over this case under 28 U.S.C. § 1331, Federal Question jurisdiction, because the case is a civil rights lawsuit brought pursuant to 47 U.S.C. § 1983, for violation of the Fifth Amendment to the United States Constitution.

## III. FACTS

**A.  Facts Concerning Sean Wattson.**

7. On or about January 9, 2021, Sean Wattson loaned his car to a friend of his, Amanda Church, to go to the store.

8. When Ms. Church did not return, Mr. Wattson learned that she had been pulled over by the Town of Brookside Police Department.

9. Ms. Church was arrested by the Town of Brookside Police Department, and charged with several drug crimes.

10. Upon the arrest of Ms. Church, the Town of Brookside Police Department confiscated Mr. Wattson's car. It never even instituted a civil forfeiture action under Ala. Code § 20-2-93.

11. Shortly after Ms. Church's arrest, Mr. Wattson began calling the Town of Brookside Police Department to retrieve his car. He left numerous messages, but was never even given the decency of a phone call back to let him know about his car.

12. Mr. Wattson has never been charged with a crime. He had no knowledge that Ms. Church would have drugs in his car, or that she would commit any crime with his automobile. Because he had no knowledge of any intent to commit a crime by Ms. Church, Mr. Wattson could not have prevented any crime.

13. Mr. Wattson made approximately twenty-five (25) phone calls in an attempt to retrieve his vehicle; and emailed the Town of Brookside Police Chief to attempt to get his car back. He never received a return call or email.

14. The Town of Brookside, through its Police Department, simply took Mr. Wattson's car.

15. The deprivation of Mr. Wattson's car has resulted in hardship because, like most people, he needs his car to work and to go about his life.

16. Finally after months, Mr. Wattson, with assistance of counsel, was able to have his car returned to him in September of 2021. While he was able to regain possession of his car, he was without it for almost nine (9) months, and when it was returned to him, it was in disrepair, causing him to spend significant sums of money to get it back into working condition.

**B.       Facts Concerning Katelyn Lawrence.**

17. Katelyn Lawrence was a passenger on the motorcycle that was owned, jointly, with Corey Thomas, who was driving the motorcycle.

18. Mr. Thomas and Ms. Lawrence were pulled over all the way on Interstate 65 in Jefferson County, Alabama.

19. Mr. Thomas was operating the motorcycle lawfully. However, a Brookside police officer, identified only as "Agent MM" pulled up next to Thomas and Lawrence and signalized that he was to pull over on the upcoming off ramp.

20. Before Mr. Thomas could pull over, the officer abruptly pulled in front of him, causing him to collide with the police officer. Both Thomas and Lawrence were thrown from the motorcycle, and the motorcycle was extensively damaged.

21. Mr. Thomas was charged with several misdemeanor crimes, none of which he actually committed.

22. The Brookside officer confiscated the motorcycle, which Ms. Lawrence jointly owned.

23. It has now been over a year, and the motorcycle has not been returned.

24. Following the incident, Ms. Lawrence and Mr. Thomas made an insurance claim for the damage to their motorcycle. As part of the claims process, Ms. Lawrence's insurance company sought to inspect the motorcycle to assess the damage.

25. Brookside refused to allow the insurer to inspect the motorcycle, and instead turned it over to the lienholder on the motorcycle. As a result of Brookside's refusal to allow the insurer to inspect it, the insurance claim on the motorcycle was denied. As a result, Ms. Lawrence still had to make payments on a motorcycle she did not have, and could not make an insurance claim on. She defaulted on the note, which has adversely affected her credit rating.

C.   **Facts Relating to Cedric Killings**

26. Cedric Killings was driving a Mustang convertible that he had restored to working order over an almost six month period. Because the car had not been running when he bought it, he did not have insurance or proper registration.

27. Mr. Killings did have a bill of sale for the vehicle.

28. Mr. Killings was pulled over by the Town of Brookside police officers in January of 2022, originally for having a headlight out.

29. Mr. Killings was given multiple tickets, and his car was towed by Jett's Towing.

30. Mr. Killings was told that if he could get a headlight, a tag, proof of insurance, and have the original title in 72 hours, he could get his car back. Mr. Killings tried to get all of that accomplished in a 72 hour period, but was unable to do so.

31. Since the revelation of misfeasance by the Town of Brookside have come to light, the Town of Brookside Municipal Court now tells Mr. Killings that he just needs to provide them with the bill of sale.

32. Mr. Killings has the bill of sale, but still cannot get his vehicle release. No civil asset forfeiture action has been instituted against Mr. Killings, they have just kept his vehicle for these many months.

**D.    Facts Relating to Tiffany Burks**

33. Tiffany Burks was involved in an argument at the Dollar General Store in Brookside, Alabama.

34. She left the Dollar General parking lot of her own volition, only to be pulled over by the Brookside Police Department.

35. She was told to leave her car, and was placed, handcuffed, in the back of a Brookside police car.

36. Jett's Towing was called, and Ms. Burks' vehicle was towed away.

37. Ms. Burks had to pay the Brookside Municipal Court to obtain a release for her car, and then she had to pay Jett's Towing an impound fee to have her car released.

38. Ms. Burks had $3,500.00 in cash in the glove compartment of her car when she was pulled over.

39. When Ms. Burks was able to retrieve her car, the next day, after having been charged with Domestic Violence, despite nobody making a complaint against her, the $3,500.00 was gone. Nobody has been able to tell her what happened to her money.

## IV. THE TOWN OF BROOKSIDE'S ACTIONS HAVE DEPRIVED PLAINTIFFS OF THEIR RIGHTS IN HIS PROPERTY SUBJECTING IT TO LIABILITY UNDER STATE AND FEDERAL LAW

### A. The Seizure Creates Tort Liability Under Ala. Code § 6-8-266.

40. In no case, nor in the cases of the class members, did the Town refer the cases to the District Attorney for Jefferson County, Alabama, for the institution of Civil Asset Forfeiture Proceedings pursuant to Ala. Code § 20-2-93 (1975), which

is the only vehicle that would be available for the continued detention of property seized pursuant to an arrest.

41. The seizures of property related above constituted unlawful deprivations of their personal property. Plaintiffs were deprived of their property. Even if Plaintiffs had their property returned, they were still damaged by the loss of the use of property over the time the Town of Brookside retained it.

42. Ala. Code § 6-5-260 (1975) provides a remedy for those deprived of their property, or whose property rights are interfered with. The Code section states that, "Any unlawful deprivation of or interference with such possession [of personal property] is a tort for which an action lies."

43. Plaintiffs have such an action available to them for both return of their property, and the damages caused by the deprivation.

**B.    The Confiscation of Plaintiffs' Property Constitutes An Unlawful Taking Without Compensation.**

44. The Fifth Amendment to the United States Constitution states that "private property [shall not] be taken for public use without just compensation." U.S. Const. Amendment V.

45. "When the government physically takes possession of [all or part of] an interest in property for some public purpose, it has a categorical duty to compensate the owner." Tahoe-Sierra Pres. Council, Inc. v Tahoe Regional Planning Agency, 535 U.S. 302, 323 (2002).

46. Plaintiffs' property has been taken, and they have not been compensated.

## C. The Alabama Department of Examiners of Public Accounts Investigation Confirmed the Existence of Conditions Allowing the Town of Brookside Personnel to Violate the Constitutional Rights of Those Subject to Traffic Stops

47. The activities of the Town of Brookside and its Police Department were reported in the local news media, and prompted an investigation into the Town of Brookside, its Police Department, and its relationship with the judicial process relating to traffic stops and the confiscation of property by the Alabama Department of Examiners of Public Accounts ("the Report"). Ex. A hereto. It found a complete lack of any process for accountability.

48. The Report detailed the failure of the system within the Town of Brookside.

49. The Report outlines that, while the Town has written procedures for the receipt and disbursement of certain funds, there are "no written policies and procedures in place to address the Town's receipt and disbursement of funds in general."

50. As a result of the lack of any policies, the Report concluded:

> … the Town's lack of established and properly written policies and procedures related to internal controls contributed to most of the issues and findings. The Town does not have written policies and procedures in place to address the daily operations of the Town, including the receipt and disbursement of public funds.

9

> There is no established and implemented purchasing process to ensure compliance with Section 94 of the *Constitution of Alabama 1901* or provisions adopted by the Town in its ordinances. There are no perpetual inventory records kept ensuring that evidence collected by the Town's Police Department is accounted for properly. The Town's Municipal Court does not have written policies and procedures in place to ensure compliance with the *Alabama Rules of Judicial Administration*. The Town did not ensure that all amounts collected were for offenses included in the Town's ordinances and that the provisions of their ordinances were consistently applied. The Town did not ensure compliance with Alabama Competitive Bid Law and Section 22 of the *Constitution of Alabama 1901* when awarding the contract for towing services. Without proper internal controls, including established and implanted policies and procedures tat are monitored by those charged with management and governance of the Town, reasonable assurance cannot be provided that all the reviewed functions of the Town are properly carried out…

This lack of policy created a situation where seized property would not be accounted for or returned to its rightful owner. Ex. A, pp. 9-18.

51. The unregulated receipt and catalogue of seizures made it possible for the unlawful deprivations of property of property to go unchecked for years.

## V. **CLASS ALLEGATION**

52. <u>Class Definition</u>:   Pursuant to Fed.R.Civ.P. 23(a), (b)(1), and (b)(2), Plaintiffs bring this action on behalf of themselves and all others similarly situated, as members of the proposed Plaintiff Class defined as follows:

>All persons who have had property seized by the Town of Brookside, Alabama beginning six (6) years before the filing of this action.

53. <u>Numerosity</u>: The members of each class and subclass are so numerous that their individual joinder would be impracticable in that: (a) the Class includes at least dozens of individual members; (b) the precise number of Class members and their identities are unknown to Plaintiffs, but are available through public records, and can easily be determined through discovery; (c) it would be impractical and a waste of judicial resources for each of the at least hundreds of individual class members to be individually represented in separate actions; and (d) it is not economically feasible for those class members to file individual actions.

54. <u>Commonality/Predominance</u>: Common questions of law and fact predominate over any questions affecting only individual class members. These common legal and factual questions include, but are not limited to, the following:

>a. Whether the confiscation of property subjects the Town of Brookside to liability pursuant to Ala. Code § 6-5-266.
>
>b. Whether the seizures of property by the Town of Brookside is an unconstitutional taking of property without compensation prohibited by the Fifth Amendment.

55. <u>Typicality</u>: Plaintiff is typical of the claims of the class members. Plaintiff and all class members have been injured by the same wrongful practices.

Plaintiffs' claim arises out of the same practices and course of conduct that give rise to the claims of the class and are based on the same legal theories for the class.

56. <u>Adequacy</u>: Plaintiff will fully and adequately assert and protect the interests of the class. Plaintiff has counsel experienced in class actions and complex mass tort litigation. Neither Plaintiff nor counsel have interests contrary to or conflicting with the interests of the class or subclasses.

57. <u>Superiority</u>: A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims by each of the class members is economically unfeasible and impractical. While the aggregate amount of the damages suffered by the class is large, the individual damage suffered by each, in many cases is too small to warrant the expense of individual lawsuits. The court system would be unreasonably burdened by the number of cases that would be filed it as a class action if not certified.

58. Plaintiff does not anticipate any difficulties in the management of this litigation.

59. The State and its local law enforcement agents have acted on grounds generally noticeable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole proper.

## VI.  CAUSE OF ACTION

### COUNT I
### (Class Claim Under 42 U.S.C. § 1983 for Violations of Plaintiffs' Constitutional Rights.)

60.   Plaintiffs incorporates by reference, as if fully set forth herein, paragraphs 1-59 above.

61.   This claim is brought pursuant to 28 U.S.C. § 1983, which gives persons deprived of constitutional rights under color of State law the right to bring a civil action to vindicate those rights.

62.   The Town of Brookside has acted under color of State law to deprive Plaintiffs' of their property.

63.   As stated above, the actions of the Town of Brookside violate the Fifth, Amendment.

**WHEREORE**, for the foregoing reasons, Plaintiff demands the following relief:

   a.   An Order certifying this case as a class action; appointing Mr. Wattson; Ms. Lawrence; Mr. Killings; and Ms. Burks as the class representatives; and undersigned counsel as class counsel.

   b.   An Order of the Court causing the Town of Brookside to return all seized property.

   c.   An award of compensatory and punitive damages for Plaintiffs the Class for the loss of the use of their property.

    d.    An award of attorneys' fees, costs, and expenses of this action pursuant to 42. U.S.C. § 1988(b).

## COUNT II
### (Class Claim Under Ala. Code § 6-5-266.)

64. Plaintiff incorporates by reference, as if fully set forth herein, paragraphs 1-63 above.

65. The Town of Brookside, Alabama is a municipal corporation subject to suit under Alabama law.

66. Ala. Code § 6-5-260 states that, "Any unlawful deprivation of or interference with such possession [of personal property] is a tort for which an action lies."

67. Plaintiffs and the Plaintiff Class have been deprived of their property without ever being charged with a crime and without any reason given therefore, statutory or otherwise.

**WHEREFORE**, Plaintiffs demand the following relief:

    a.    An Order certifying this case as a class action; appointing Mr. Wattson; Ms. Lawrence; Mr. Killings; and Ms. Burks as class representatives; and appointing undersigned as class counsel.

    b.    An order returning all seized property to its rightful owners.

    c.    An award of compensatory and punitive damages to Plaintiffs and the Plaintiff Class for the loss of their property and/or its use.

## JURY DEMAND

Plaintiffs demand a trial by struck jury.

/s/ Brian M. Clark
Brian M. Clark
Attorney for Plaintiffs

**OF COUNSEL**
WIGGINS, CHILDS, PANTAZIS,
FISHER, & GOLDFARB, LLC
The Kress Building
301 Nineteenth Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0530
Facsimile: (205) 254-1500
Email:  bclark@wigginschilds.com

/s/ Allan Armstrong
Allan Armstrong
Attorney for Plaintiffs

**OF COUNSEL**
ARMSTRONG LAW CENTER, LLC
The Berry Building
2820 Columbiana Road
Vestavia Hills, Alabama  35216
Birmingham, Alabama 35203
Email:  armstrong.atty@gmail.com

/s/ Darrell Cartwright
Darrell Cartwright
Attorney for Plaintiffs

**OF COUNSEL**
CARTWRIGHT LAW CENTER, LLC
Post Office Box 383204
Birmingham, Alabama  35238
Email:  dcartwright@gmail.com

/s/ J. Mark White
J. Mark White
Attorney for Plaintiffs

**OF COUNSEL**
WHITE ARNOLD & DOWD P.C.
2025 Third Avenue North, Suite 500
Birmingham, Alabama  35203
(205) 323-1888
Email:  mwhite@whitearnolddowd.com

/s/ Bill Baxley
Attorney for Plaintiffs

**OF COUNSEL**
BAXLEY JACKSON LAW FIRM
300 Vestavia Parkway, Ste. 3200
Vestavia Hills, Alabama 35216
Email: bill@baxleyjackson.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been properly served by way of the CM/ECF system, electronic mail, and/or U.S. Mail to all counsel of record on this the 15th day of August 2022.

/s/ Brian M. Clark
Of Counsel