FILED
2023 May-26  PM 01:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **SEAN WATTSON;** | ) |
| **BRITTANY TODD;** | ) |
| **ZACKERY HARRIS; ANGELA** | ) |
| **CRAWFORD; DANIEL** | ) |
| **KILGORE; SEAN JONES and;** | ) |
| **DARREN LeCROY on behalf** | ) |
| **Of themselves and those similarly** | ) |
| **Situated as described below,** | ) |
| | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )    **CIVIL ACTION NO.:** |
| | )    **2:21-cv-00649-AMM** |
| **THE TOWN OF BROOKSIDE,** | ) |
| **ALABAMA, a municipal** | ) |
| **corporation; and JETT'S** | ) |
| **TOWING, INC.;** | ) |
| | ) |
| | ) |
| **Defendants.** | ) |

**<u>CONSOLIDATED AMENDED CLASS ACTION COMPLAINT</u>**

Plaintiffs Sean Wattson; Brittany Todd; Zackary Harris; Angela Crawford; Daniel Kilgore;

Sean Jones; and Darren LeCroy (sometimes collectively referred to as "Plaintiffs"), on behalf of

themselves and a putative class of similarly situated individuals, state the following as their Third

Amended Consolidated Class Action Complaint against the Town of Brookside ("Brookside" or

"The Town"), Alabama and Jett's Towing, Inc. ("Jett's Towing").[1]

## I.    <u>PARTIES</u>

1.      Sean Wattson is over the age of nineteen (19), and is a resident of Jefferson County,

---

[1] This Third Amended Consolidated Complaint is filed pursuant to the Court's instruction in its Order, Doc. 40, on May 12, 2023, which consolidates the case with Case No. 2:22-cv-157-AMM, which has been administratively closed.

Alabama.

2.      Brittany Todd is over the age of nineteen (19), and a resident of Jefferson County, Alabama.

3.      Zackery Harris is over the age of nineteen (19), and a resident of Jefferson County, Alabama.

4.      Angela Crawford is over the age of nineteen (19), and a resident of Jefferson County, Alabama.

5.      Daniel Kilgore is over the age of nineteen (19), and a resident of Jefferson County, Alabama.

6.      Sean Jones is over the age of nineteen (19), and a resident of Jefferson County, Alabama.

7.      Darren LeCroy is over the age of nineteen (19), and a resident of Jefferson County, Alabama.

8.      Defendant Town of Brookside, Alabama, is a municipal corporation organized under the laws of the State of Alabama, and subject to suit.

9.      Defendant Jett's Towing, Inc. ("Jett's Towing"), is an Alabama corporation with its principal place of business in Adamsville, Alabama.

## II.      JURISDICTION AND VENUE

10.      This Court has jurisdiction over this case under 28 U.S.C. § 1331, Federal Question jurisdiction, because it is a civil rights lawsuit brought pursuant to 42 U.S.C. § 1983, for violation of the Eighth Amendment to the United States Constitution, and under the Racketeering Influenced and Corrupt Organization Act ("RICO") 18 U.S.C. § 1964.

11.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b)(2), as this is the Judicial District and Division in which a substantial part of the events and omissions giving rise to the claim occurred.

### III.        FACTS OF THE CASE

12.     The small Town of Brookside, Alabama is located along Interstate 22 in north Jefferson County, Alabama.  The population of Brookside is approximately 1,253.

13.     Despite its small population, Brookside has a prolific police department that is well-known for using its police powers to "shake down" Brookside residents and those who pass through Brookside for excessive fines, penalties and municipal court costs.

14.     Brookside's ticketing and property confiscation practices generate revenue that supports its general fund, police department and municipal court.

15.     Upon information and belief, due to the recent intense scrutiny Brookside has been confronted with, its police chief, Mike Jones, his second in charge, James Savelle, III and many officers have separated from the police department.

16.     Brookside has effectuated a scheme whereby it has been able to amass a small army as a police force through ill-gotten fines and seizures.

17.     While Brookside has fewer than 1,500 residents, it had a police force far in excess of any rationally necessary number, SWAT team training for its officers, and an armored riot control vehicle.

18.     In 2018, Brookside had one full-time police officer, and wrote traffic citations that generated $82,467.00, in fines.  Those revenues have skyrocketed since 2018; up to $610,000.00, in 2020.

19.     All of this occurred in a town that has only one business, a Dollar General Store, and no stoplights.

3

A.        **Facts Concerning Sean Wattson.**

20.      On or about January 9, 2021, Sean Wattson loaned his car to a friend of his, Amanda Church, to go to the store.

21.      When Ms. Church did not return, Mr. Wattson learned that she had been pulled over by the Town of Brookside Police Department.

22.      Ms. Church was arrested by the Town of Brookside Police Department, and charged with several drug crimes.

23.      Upon the arrest of Ms. Church, the Town of Brookside Police Department confiscated Mr. Wattson's car. It never even instituted a civil forfeiture action under Ala. Code § 20-2-93.

24.      Shortly after Ms. Church's arrest, Mr. Wattson began calling the Town of Brookside Police Department to retrieve his car.  He left numerous messages, but was never even given the decency of a phone call back to let him know about his car.

25.      Mr. Wattson's car was towed and impounded by Jett's Towing.

26.      Mr. Wattson has never been charged with a crime.  He had no knowledge that Ms. Church would have drugs in his car, or that she would commit any crime with his automobile. Because he had no knowledge of any intent to commit a crime by Ms. Church, Mr. Wattson could not have prevented any crime.

27.      Mr. Wattson made approximately twenty-five (25) phone calls in an attempt to retrieve his vehicle; and emailed the Town of Brookside Police Chief to attempt to get his car back. He never received a return call or email.

28.      The Town of Brookside, through its Police Department, simply took Mr. Wattson's car.

29.     The deprivation of Mr. Wattson's car resulted in hardship because, like most people, he needs his car to work and to go about his life.

30.     Finally, after months, Mr. Wattson, with assistance of counsel, was able to have his car returned to him in September of 2021.  While he was able to regain possession of his car, he was without it for almost nine (9) months, and when it was returned to him, it was in disrepair, causing him to spend significant sums of money to get it back into working condition.

31.     Between 2018 and 2020 the number of cars, towed and impounded by Brookside and its co-conspirator, Jett's Towing, went from 50 to 789, and traffic citations rose from 382 to 3024. By 2020, revenues from fines, fees, and forfeitures made up approximately 49% of Brookside's annual revenue.

32.     It is true that the vast majority of the fines and fees collected went to the police department to make it beyond bloated. However, the largess trickled down to the town, Brookside Municipal Court, Brookside Municipal Court Judge, and the Brookside town attorney.

33.     In the same time period referenced above, when fines, citations, and revenues exploded, the municipal court judge's salary more than doubled, and the town's attorney's salary increased over $50,000.00.

34.     The Brookside City Council appointed the municipal court judge, who then assessed fines and fees that make up almost half of the town of Brookside budget, which pays his salary.

35.     The municipal court, <u>writ large</u>, is responsible for creating the revenue that funds nearly half the town's budget, including the City Council members, who are paid by those same fines and fees. In a word, all of these entities are incentivized to maximize fee and fine revenue. Each of these actors work in concert in violation of the law to create a revenue stream from citizens

like plaintiffs in this case. The more revenue created, the more money available for the town, Brookside Municipal Court, the prosecutor, the city council, and the police department.

**B.** **Facts Relating to Brittany Todd.**

36.     Brittany Todd was driving in the Town of Brookside on or about June 13, 2020, when she was pulled over for a U-turn by a Brookside Police officer.

37.     She was arrested, and her car was immediately towed away by Jett's Towing.

38.     Ms. Todd's car was impounded, and she had to pay in excess of $300.00 to retrieve her vehicle.  This payment operated as a fine because it extracted a payment by Ms. Todd in exchange for her vehicle.  The seizure, impoundment, and extraction of payment were carried out using the police power of the Town of Brookside.  The Town of Brookside did not file a Civil Asset Forfeiture action pursuant to Ala. Code § 20-2-93, against Ms. Todd.

39.     The combination between the Town of Brookside, and the Municipal Court and its officers, and Jett's Towing, was aimed at extorting money from people stopped by the Town of Brookside Police Department.  Jett's Towing, according to the Department of Examiners of Public Accounts, was the only company used to tow vehicles, and it was chosen to perform this task without going through the formal bid process required by Ala. Code § 41-16-50.

40.     More importantly the monies extracted by Jett's Towing were according to the above-referenced Report: (1) not accounted for in a way that would differentiate those fees from other monies paid the Police Department; and (2) were collected, in many instances, for offenses not listed in the Town's ordinances, which means the Town had no right to collect impound fees at all.

41.     In any case, fees collected as "impound fees" should be reasonably related to the costs of administrating the legal and proper impoundment of vehicles.  These fees were not so related, and the impounds, as described herein, were not authorized by law to begin with.

42.     The Town of Brookside used its police power to extract payment from Ms. Todd in order to get her vehicle back.

43.     The police power that resulted in the fines and fees has been monetized by the Municipal Court system. Municipal Court fines and fees, including those created by the tows, fund a significant portion of the Town's budget. The Municipal Court, its officers, the police department, and the Town itself and the city council members, who are paid through that budget, are incentivized to maximize fee and fine revenue. Each of these actors work in concert in violation of the law to create a revenue stream from citizens like the Plaintiffs in this action. The more revenue created, the more money available for the Town and its police department.

C.      **Facts Relating to Zackary Harris.**

44.     Zackary Harris was pulled over by a Town of Brookside Police officer in March of 2019.

45.     Mr. Harris' vehicle was towed and impounded by Jett's Towing under the same scenario pled above. Mr. Harris had to pay towing costs to retrieve his vehicle as part of the fines imposed by the Town of Brookside. Those towing costs were disproportionate to the crimes alleged. Mr. Harris was deprived of his vehicle until he could pay the towing and impoundment costs.

46.     The police power that resulted in the fines and fees has been monetized by the Municipal Court system. Municipal Court fines and fees, including those created by the tows, fund a significant portion of the Town's budget. The Municipal Court, its officers, the police

department, and the Town itself and the city council members, who are paid through that budget, are incentivized to maximize fee and fine revenue. Each of these actors work in concert in violation of the law to create a revenue stream from citizens like the Plaintiffs in this action. The more revenue created, the more money available for the Town and its police department.

D.      **Facts Relating to Angela Crawford**

47.     Angela Crawford was pulled over for running a stop sign by The Brookside Police Department on May 3, 2021.

48.     Ms. Crawford did not run the stop sign.

49.     The Brookside Police officers that pulled Ms. Crawford over demanded that she exit her vehicle.

50.     When Ms. Crawford questioned why she had been so directed, she was told that she failed to appear for an earlier traffic citation.

51.     Ms. Crawford had paid the previous traffic citation, and she tried to explain this to the officers.  She even tried to show them the electronic receipt for her payment of the earlier citation.

52.     The Brookside Police Officers were unmoved and told her that this was not their problem.  They called Jett's Towing and had her car towed.  Moreover, Ms. Crawford, who had a stroke that limited her mobility, was handcuffed and taken to the Brookside jail at great discomfort.

53.     Ms. Crawford never was charged with failing to stop at a stop sign.  Ms. Crawford did, however, have to pay $181.12 to the Town of Brookside to obtain a release for her vehicle, and then pay Jett's Towing another $160.00 to get her car back.

54.     The Town of Brookside personnel did, eventually, figure out that Ms. Crawford had paid the previous ticket, and refunded Ms. Crawford's payment, but that did not repair the anxiety she suffered as a result of this incident.

55.     Ms. Crawford's anxiety and embarrassment at the entire situation was made even worse when, despite having her towing charges repaid, and never being charged with a crime, Ms. Crawford's picture was posted on the Town of Brookside's Facebook page as a part of the "Operation Clean Streets" program.

56.     This public shaming led to embarrassment and panic attacks for which Ms. Crawford had to seek medical treatment.

57.     The police power that resulted in the fines and fees has been monetized by the Municipal Court system. Municipal Court fines and fees, including those created by the tows, fund a significant portion of the Town's budget. The Municipal Court, its officers, the police department, and the Town itself and the city council members, who are paid through that budget, are incentivized to maximize fee and fine revenue. Each of these actors work in concert in violation of the law to create a revenue stream from citizens like the Plaintiffs in this action. The more revenue created, the more money available for the Town and its police department.

**E.      Facts Relating to Daniel Kilgore**

58.     On July 8, 2020, Daniel Kilgore was pulled over on Interstate 22.

59.     Mr. Kilgore had just bought a new truck and did not have license plates on it.

60.     When asked to produce his license by the Brookside Police Officer, Mr. Kilgore responded that he did not have his license.  At that point, Mr. Kilgore was told to exit the car, when Mr. Kilgore exited the car, he was handcuffed and placed in the back of the police car while the officers ransacked his vehicle.

61.     Mr. Kilgore was ticketed for driving without a license or insurance. Despite the fact that Mr. Kilgore could readily have called someone to get his vehicle, it was towed to Jett's Towing right from the spot of his traffic stop just as the other vehicles in this Complaint were.

62.     Mr. Kilgore's family members were required to pay $175 to the Town of Brookside in order to get a form so that Jett's Towing would release the vehicle.  When they arrived at Jett's, Mr. Kilgore's relatives were required to pay another $160.00 to Jett's Towing to release the vehicle.

63.     The police power that resulted in the fines and fees has been monetized by the Municipal Court system. Municipal Court fines and fees, including those created by the tows, fund a significant portion of the Town's budget. The Municipal Court, its officers, the police department, and the Town itself and the city council members, who are paid through that budget, are incentivized to maximize fee and fine revenue. Each of these actors work in concert in violation of the law to create a revenue stream from citizens like the Plaintiffs in this action. The more revenue created, the more money available for the Town and its police department.

F.      **Facts Relating to Sean Jones**

64.     In June and July of 2021, Sean Jones was pulled over three times by the Town of Brookside's police officers and charged with driving without insurance.

65.     Mr. Jones did have the required insurance, but he could not show it to the officers because he kept a digital copy on his phone, which was damaged and would not work at the time of his traffic stops.

66.     Mr. Jones went to court to present proof of insurance several weeks later because he was told that he could present proof of insurance at that point and have his charges dropped.

67.     Mr. Jones is a paraplegic, and when he got to court for the proof of insurance case, he was met outside by police officers, who told him to wait outside until his case was called because of crowding in the courtroom.

68.     While in the parking lot, the Brookside Police Officers saw a glass container containing plastic bags.  The police officers used that as a reason to search Mr. Jones's car.

69.     The police officers found no marijuana in the car, but Mr. Jones did tell them that he had a marijuana pipe in the car, for which he was immediately handcuffed and rolled in his wheelchair right into the jail.

70.     Mr. Jones was left in a Brookside jail cell for over five hours without his wheelchair.  This was significant for Mr. Jones as he had to literally drag himself across the floor and pull himself up by the toilet just to use the bathroom.

71.     Mr. Jones pled guilty to the paraphernalia charge and has been fined thousands of dollars the same day.

72.     To add insult to injury, Mr. Jones's car was towed to Jett's Towing under the scheme related above. Mr. Jones then had to pay the Brookside Municipal Court a fee to get his car released, and a fee to pay Jett's Towing to retrieve his car.

73.     The police power that resulted in the fines and fees has been monetized by the Municipal Court system. Municipal Court fines and fees, including those created by the tows, fund a significant portion of the Town's budget. The Municipal Court, its officers, the police department, and the Town itself and the city council members, who are paid through that budget, are incentivized to maximize fee and fine revenue. Each of these actors work in concert in violation of the law to create a revenue stream from citizens like the Plaintiffs in this action. The more revenue created, the more money available for the Town and its police department.

11

**G.**      **Facts Relating to Darren LeCroy**

74.      On March 31, 2021, Darren LeCroy was in the Dollar General parking lot in Brookside, Alabama.   He was having an argument with his girlfriend, Tiffany Burks.   The argument was only verbal, and neither Mr. LeCroy nor Ms. Burks contend that either laid a hand on the other.

75.      After the argument, both Mr. LeCroy and Ms. Burks left the Dollar General parking lot in their own vehicles.

76.      Mr. LeCroy was pulled over and detained, and eventually charged with Domestic Violence 3rd degree, even though neither party swore out a warrant against the other, or even made a complaint, Mr. LeCroy' s vehicle was towed under the same scheme related herein, and he had to pay a fee to the Town of Brookside to get his car released, and then another fee to Jett's Towing.

77.      The police power that resulted in the fines and fees has been monetized by the Municipal Court system. Municipal Court fines and fees, including those created by the tows, fund a significant portion of the Town's budget. The Municipal Court, its officers, the police department, and the Town itself and the city council members, who are paid through that budget, are incentivized to maximize fee and fine revenue. Each of these actors work in concert in violation of the law to create a revenue stream from citizens like the Plaintiffs in this action. The more revenue created, the more money available for the Town and its police department.

**I.      CLASS ALLEGATIONS**

78.      Class Definition:   Pursuant to Fed. R.Civ. P. 23(a), (b)(1), (b)(2), and (b)(3) Plaintiffs bring this action on behalf of themselves and all others similarly situated, as members of the proposed Plaintiff Classes defined as follows:

Subclass A

All persons who had their automobiles towed and impounded by Jett's Towing, as the result of a traffic stop by the Town of Brookside, Alabama and had to pay a fine or fee to the Town of Brookside to have their car released, and then another fee to Jett's Towing to retrieve their car.  This class is represented by plaintiffs Todd, Harris, Crawford, Kilgore, Jones, Wattson, and LeCroy.

Subclass B

All persons who were stopped by the Brookside Police department, and subsequently had their cars towed by Jett's Towing, at the request of Jett's Towing. This class is represented by Plaintiffs Todd, Wattson, and Harris.

79.    Numerosity: The members of each Class or Subclass are so numerous that their individual joinder would be impracticable in that: (a) the Class or Subclass includes at least hundreds of individual members; (b) the precise number of Class or Subclass members and their identities are unknown to Plaintiffs, but are available through public records, and can easily be determined through discovery; (c) it would be impractical and a waste of judicial resources for each of the at least hundreds of individual class or subclass members to be individually represented in separate actions; and (d) it is not economically feasible for those class members to file individual actions.

80.    Commonality/Predominance: Common questions of law and fact predominate over any questions affecting only individual class members. These common legal and factual questions include, but are not limited to, the following:

a.    Whether the imposition of fines by Brookside and fees by Jett's Towing to retrieve vehicles from Jett's impound lot when Jett's towing was called pursuant to a traffic stop by the Town of Brookside, Alabama constitutes an excessive fine under the Eighth Amendment to the United States Constitution.

13

b.      Whether the Town of Brookside and Jett's Towing conspired under 42 U.S.C. § 1983 to violate Plaintiffs' Eighth Amendment rights.

c.      Whether the Town of Brookside and Jett's Towing constituted an enterprise under RICO.

d.      Whether the calling of Jett's Towing to the scene of accidents and/or traffic stops, and then charging people money to retrieve impounded cars constituted a predicate acts under RICO pursuant to the Hobbs Act.

81.     <u>Typicality</u>:  Plaintiffs claims are typical of the claims of the Class or Subclass members.  Plaintiffs and all class and subclass members have been injured by the same wrongful practices.  Plaintiffs' claims arise out of the same practices and course of conduct that give rise to the claims of the subclass and are based on the same legal theories for the class.

82.     <u>Adequacy</u>:  Plaintiffs will fully and adequately assert and protect the interests of the Class and Subclasses.  Plaintiffs have counsel experienced in class actions and complex mass tort litigation.  Neither Plaintiffs nor counsel have interests contrary to or conflicting with the interests of the Class or Subclasses.

83.     <u>Superiority</u>: A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims by each of the Class or Subclass members is economically unfeasible and impractical. While the aggregate amount of the damages suffered by the class is large, the individual damage suffered by each, in many cases is too small to warrant the expense of individual lawsuits.  The court system would be unreasonably burdened by the number of cases that would be filed if a class action if not certified.

84.     Plaintiffs do not anticipate any difficulties in the management of this litigation.

14

85.     Defendants have acted on grounds generally noticeable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole proper.

## COUNT I

**(Class Claim Against the Town of Brookside, and Jett's Towing Pursuant to 42 U.S.C. § 1983 for Conspiring to Violate Plaintiffs' Eighth Amendment Rights)**

86.     Plaintiffs incorporate by reference, as if fully set forth herein, paragraphs 1-212 above.

87.     The claim is brought to vindicate Plaintiffs' Eighth Amendment rights pursuant to 42 U.S.C. § 1983.  This Claim is also brought for the conspiracy entered into by the Town of Brookside and Jett's Towing to violate Plaintiffs' Constitutional rights.

88.     This claim is on behalf of Subclass A, represented by Plaintiffs Todd, Harris, Crawford, Kilgore, Jones, Wattson, and LeCroy.

89.     The Town of Brookside, through its Police Department had an agreement with Jett's Towing whereby it would call Jett's Towing on routine traffic stops without pursuing an action under Alabama's Civil Forfeiture Act, Ala. Code § 20-2-93.

90.     The agreement described above was for an illegal purpose.  The illegal purpose was to charge excessive fines under the Eighth Amendment when Plaintiffs were forced to pay impoundment penalties to retrieve their vehicles bearing no proportionality to the underlying traffic offense and the penalties therefore.

91.     The Town and Jett's agreed that Jett's Towing would be called on routine traffic stops, and vehicles towed by Jett's Towing.

92.     The arrangement with Jett's Towing was for the purpose of extracting monies unconstitutionally, as stated below because the impoundment of vehicles was not related to the purpose of the stops, i.e., traffic violations, and was excessive as disproportional to the fines for the actual offense charged. Moreover, Jett's Towing should not have been doing the towing in the first place.

93.     First, in opposition to the requirement contained at Ala. Code § 41-16 50, Jett's Towing never submitted a bid to perform the towing work for the Town of Brookside.

94.     Second, the impound fees were not accounted for in the books and records of the Town and/or its Police Department, so as a result, the exact amount in impound fees collected is not available.

95.     Third, according to the Department of Examiners of Public Accounts, a large percentage of impound payments discovered on paper records were for violations not listed in the Town's ordinances, meaning that the Town had no authority to even make the arrests, much less collect impound fees not related to the offense.

96.     The above-described scheme benefitted all of the parties to the conspiracy.  It created revenue for Jett's and the Town of Brookside such that those revenues would benefit the Town of Brookside through funding the bloated police department, its salaries, and its unnecessary equipment.  This was all made easier because the impound fees were not properly accounted for.

**WHEREFORE**, Plaintiffs demand the following:

a.     An Order of this Court certifying this Count as a class action; appointing Plaintiff's Todd, Harris, Crawford, Kilgore, Jones, Wattson, and LeCroy as Class Representatives and undersigned as Class Counsel.

b.     An Order of this Court directing the return of any vehicles seized by the Town of Brookside and towed by Jett's Towing, Inc.

c.  Damages in an amount to be determined by struck jury for: (i) fines paid; (ii) loss of the use of Plaintiffs' vehicles; and (iii) mental anguish damages caused by actions of Defendants.

d.  An Order of this Court directing Defendants jointly and severally to pay reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT II

**(Class Claim Under the Racketeering Influenced A Corrupt Organization Act Against Jett's Towing)**

97.    Plaintiffs incorporate by reference, as if set forth fully herein, paragraphs 1-257 above.

98.    This claim is brought pursuant to the Racketeering Influenced and Corrupt Organizations Act ("RICO").

99.    This Class is brought on behalf of Subclass B by Plaintiffs Todd, Wattson, and Harris.

100.    RICO, at 18 U.S.C. § 1964(c) provides a private cause of action to "any person injured in his business or property by reason of a violation of § 1962 of this chapter."

101.    Section 1962(c) prohibits an individual from "participating in the conduct of the affairs of an enterprise engaged in interstate commerce, through a pattern of racketeering activity."[2] Almanza v. United Airlines, Inc., 851 F.3d 1060, 1066 (11th Cir. 2017).

102.    A RICO enterprise is very broadly defined as, "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in

---

[2] Municipal entities may be part of a RICO enterprise. United States v. Cianci, 378 F.3d 71, 82-83 (1st Cir. 2004).

fact although not a legal entity."  18 U.S.C. § 1961(5).  The Town of Brookside's association in fact with Jett's Towing constitutes a RICO enterprise.

103.    The association-in-fact operative in this Count as a RICO "enterprise" is that of the Town of Brookside; the Town of Brookside Municipal Court; and Jett's Towing. The structure of the municipal institutions allowed the Town and Jett's Towing to commit the pattern of racketeering activity described below.  The structures of the municipal institutions (Town, Police Department, and Municipal Court) are ongoing and organized, and without their use, the pattern of racketeering activity explained below could not have been carried out.

104.    The Town, acting in concert with Jett's Towing, used its Police Department to shake down the class.  They have utilized the governmental institutions to carry on the pattern of racketeering described herein. Indeed, it would be impossible for the Town, through its Police Department, to carry out the racketeering activities without the use of the municipal entities.

105.    Simply put, Jett's Towing, without the burden of having to bid for the work, had an agreement where it would tow vehicles stopped by the Town of Brookside Police Department, knowing that the tows were not authorized by law, but were only done to generate: (a) fines to be paid to the Brookside Municipal Court to obtain a "release" that would (b) be brought to Jett's where Plaintiffs and the Plaintiff Class would have to pay another fee to Jett's to retrieve their vehicles.

106.    There is no question that the RICO enterprise described above is involved in interstate commerce as the Town of Brookside Police Department routinely patrols Interstate 22, and makes traffic stops along said Interstate Highway.

107.    The purpose of the association in fact between the Town of Brookside Police Department, its municipal court, and Jett's Towing, was to extract the payment of unlawful fines, impoundment, and towing charges from the people subject to traffic stops.

108.    Jett's Towing participated in the affairs through "a pattern of racketeering activity." 18 U.S.C. § 1962(a).  This activity is extortion under the Hobbs Act, 18 U.S.C. § 1951(b)(2).

109.    The Hobbs Act makes it illegal to "obstruct, delay, or affect interstate commerce or the movement of any article in commerce, by robbery or extortion or attempts or conspires to do so, or commits or threatens physical violence to any person or property in furtherance of as plan or purpose . . ." 18 U.S.C. § 1951(a).

110.    The Hobbs Act further defines extortion as, "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2).

111.    Jett's Towing, using the municipal entities, forced Plaintiffs and the Plaintiff Classes to give up their property and/or pay illegal impoundment and towing fees through fear, intimidation, and under color of official right by seizing property without the legal right to do so, and the imposition of illegal towing and impoundment fees to retrieve the vehicles.  This is extortion, prohibited by 18 U.S.C. § 1951.

112.    Extortion under 18 U.S.C. § 1951, is one of the predicate acts enumerated under RICO at 18 U.S.C. § 1961 that can create liability as "racketeering activity."

113.    Jett's Towing, in combination with the municipal entities, engaged in a "pattern of racketeering activity" which is established by just two acts of racketeering activity in the last ten (10) years.  Lehman v. Lucom, 727 F.3d 1326, 1330 (11th Cir. 2013).  More than two acts of extortion in the last ten years have been perpetrated on just the Plaintiffs in this case, but the same

19

pattern of racketeering activity has occurred dozens, or hundreds, of times within the last ten (10) years.

114.    Plaintiffs have been injured in their business or property in that they have had to pay illegal fines resulting from wrongful seizure.

**WHEREFORE**, Plaintiffs and the Plaintiff Class demand the following:

a.    An Order of this Court certifying Subclass B as a class action; appointing Plaintiffs Todd, Harris, and Wattson as Class Representatives, and undersigned as Class Counsel.

b.    Judgment under 18 U.S.C. § 1964(c) in their favor and against the Town of Brookside, Alabama and Jett's Towing.

b.    Damages in an amount to be determined by struck jury.

c.    Treble damages pursuant to 18 U.S.C. § 1964(c).

d.    A reasonable attorneys' fee and the costs of this action pursuant to 18 U.S.C. § 1964(c).

## JURY DEMAND

Plaintiffs demand a trial by struck jury on all issues so triable.

/s/ Brian M. Clark
Brian M. Clark
Attorney for Plaintiffs

**OF COUNSEL**
WIGGINS CHILDS PANTAZIS
FISHER GOLDFARB, LLC
The Kress Building
301 Nineteenth Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0530
Facsimile: (205) 254-1500
Email:  bclark@wigginschilds.com

/s/ J. Mark White
J. Mark White
Attorney for Plaintiffs

**OF COUNSEL**
WHITE ARNOLD & DOWD PC
2025 Third Avenue North
Birmingham, Alabama 35203
Email: mwhite@whitearnolddowd.com

/s/ Allan Armstrong
Allan Armstrong
Attorney for Plaintiffs

**OF COUNSEL**
ARMSTRONG LAW CENTER, LLC
The Berry Building
2820 Columbiana Road
Vestavia Hills, Alabama  35216
Birmingham, Alabama 35203
Email:  armstrong.atty@gmail.com

/s/ Darrell Cartwright
Darrell Cartwright
Attorney for Plaintiffs

**OF COUNSEL**
CARTWRIGHT LAW CENTER
Post Office Box 383204
Birmingham, Alabama  35238
Email:  dcartwright@gmail.com

/s/ Bill Baxley
Attorney for Plaintiffs

**OF COUNSEL**
BAXLEY JACKSON LAW FIRM
300 Vestavia Parkway, Ste. 3200
Vestavia Hills, Alabama 35216
Email: bill@baxleyjackson.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 26th day of May 2023, the foregoing document was served via email on all counsel of record:

wkinney@pphlaw.net

thale@halesides.com

/s/ Brian M. Clark
Of Counsel